**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARY LOU DOHERTY, JAMES DOHERTY, and JOHN DOHERTY, *Plaintiffs*,<br>v.<br>ALLSTATE INDEMNITY COMPANY, *Defendant*. | CIVIL ACTION<br>No. 15-05165 |

**MEMORANDUM**

**PAPPERT, J.** **September 27, 2016**

Mary Lou Doherty ("Doherty") and her two sons James and John (collectively "plaintiffs") sued Allstate Indemnity Company ("Allstate") over Allstate's alleged failure to abide by its obligations under a specific insurance policy. Plaintiffs own two adjoining properties which they rent to college students. In 2005 plaintiffs purchased from Allstate an insurance policy covering the two units. The policy is marketed as a "Landlords Package" and is labeled an "All-Perils" or "All-Risks" policy because it purports to insure, among other things, sudden and accidental physical losses to the property that do not fall within a specific exclusion.

In September 2014 incoming tenants alerted Doherty to extensive problems with the properties which allegedly rendered the units uninhabitable. The tenants thereupon broke their lease and moved out. After viewing the damage to the units, Doherty notified Allstate that she was making a claim for property damage and loss of rental income. She did not receive anything from Allstate either acknowledging her inquiry or informing her that Allstate had opened a claim. During the following ten months, Doherty sent Allstate several follow-up communications. Plaintiffs allege that Allstate neither responded to those communications nor

did anything to acknowledge, investigate or adjust her claim until a year later. Plaintiffs allege that as a result of Allstate's inaction, they have incurred costs for the renovations necessary to return the units to a habitable condition. Plaintiffs also claim they have suffered a loss of income due to the tenants' refusal to honor the lease and inability to rent to others.

Plaintiffs filed their complaint in state court on August 18, 2015 asserting a claim for breach of contract. (Compl., ECF No. 1.) Allstate removed the case to federal court on September 16, 2015 and filed its answer on September 24, 2015. (Def.'s Notice of Removal, ECF No. 6.) With leave of Court, Plaintiffs amended their complaint on July 20, 2016, adding claims for bad faith under 42 Pa.C.S.A. § 8371 and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law "UTPCPL," 73 P.S. § 201. (Pl.'s Am. Compl., ECF No. 66.) On August 10, 2016, Allstate filed a Motion to Dismiss the UTPCPL claim, Count III of the amended complaint. (Def.'s Mot. To Dismiss, ECF No. 67.) Plaintiffs filed their response on August 30 (ECF No. 78), and Allstate filed its reply on September 16 (ECF No. 82). For the reasons set forth below, the Court grants Allstate's motion, with leave allowing Plaintiffs to amend certain aspects of the claim.

**I.**

The properties are located at 949 and 951 Glenbrook Avenue, Bryn Mawr, Pennsylvania. (*Id.* ¶ 27.) Bryn Mawr is located in Radnor Township. (*Id.* ¶ 32.) On or around December 19, 2005 Plaintiffs entered into an insurance contract with Allstate for purposes of maintaining real property and casualty insurance on the two properties. (*Id.*) The insurance policy, Policy Number 908879295, is a "Landlords Package" and is labeled as an "All-Perils" and/or "All-Risks" insurance policy. (*Id.* ¶¶ 18, 19.) The policy purports to cover "sudden and accidental direct physical loss to [the] property. . . except as limited or excluded in this policy." (*Id.* ¶ 21,

Ex. A.) The policy also insures lost fair rental income resulting from a covered loss which makes a rental unit uninhabitable for the shortest period of time required to repair or replace the unit, but not to exceed 12 months from the date of loss. (*Id.* ¶ 22.)

Plaintiffs allege that in soliciting the contract, Allstate "made representations that its "All-Perils" Landlord Package Policy had better benefits, advantages, and conditions, which no other insurer could provide so as to give Plaintiffs the best possible protection for their real property." (*Id.* ¶ 28.) Allstate also gave Plaintiffs "written documentation and publications, in the form of pamphlet materials, to support and confirm the representations being made to Plaintiffs." (*Id.* ¶ 29.) Plaintiffs "became impressed with [Allstate's] representation of its "All-Perils" Landlord Package Insurance Policy, and relied upon those same representations, believing that the terms and conditions of the insurance policy would protect them for losses such as identified by Plaintiffs [in this case]." (*Id.* ¶ 30.)

The Amended Complaint alleges that the Plaintiffs were licensed to do business in Radnor Township at all times relevant and that "[a]t those, and all other times material, Plaintiffs maintained their premises located at 949 and 951 Glenbrook Avenue . . . in a good and habitable condition." (*Id.* ¶¶ 9–11, 31.) Plaintiffs further allege that at all material times, the premises "were in compliance with all Municipal Laws, Ordinances, Regulations, and Statutes administered and enforced by the Township of Radnor." (*Id.* ¶ 32.) The premises have passed all required inspections to be in compliance since November 29, 2005. (*Id.* ¶ 33.)

On or around October 21, 2013 Plaintiffs leased both units to two groups of tenants. (*Id.* ¶ 35, Ex. B.) The lease term ran from June 1, 2014 to May 31, 2015. (*Id.* ¶ 36, Ex. B.) The tenants inspected the properties before moving in. (*Id.* ¶¶ 38–39.) On August 22, 2014, both Radnor Township's Department of Community Development and the Police Department

responded to a call and/or incident report concerning the leased premises. (*Id.* ¶ 40, Ex. C.) They confirmed that there were damages to the premises but took no enforcement actions. (*Id.* ¶ 41.) On August 27, 2014 the Department of Community Development returned and prepared a list of property damages that Plaintiffs were required to repair. (*Id.* ¶ 42–43, Ex. D.)

On September 6, 2014 Doherty received a letter from the tenants stating that they were breaking the lease and moving out because the property was in a damaged and uninhabitable condition. (*Id.* ¶ 44, Ex. E.) On the same day, Doherty inspected both properties and found them to be damaged. (*Id.* ¶ 45.) The damages included broken windows, buckled hardwood floors, water stains and plaster damage to the ceilings, damaged walls, doors, woodwork, and fixtures, detached ceiling lights and smoke alarms, dirt in the dishwasher and appliances, and a broken stove and refrigerator. (*Id.* ¶ 46.) As an initial measure, Doherty changed the locks, replaced the broken windows, and restored the utility service. (*Id.* ¶ 48.)

On September 6, 2014 Doherty also reported her claim to her local Allstate agent by sending a letter by facsimile and certified mail. (*Id.* ¶ 54, Ex. G) She also sent a copy of the same letter to Allstate's Corporate Office by certified mail. (*Id.* ¶ 55, Ex. G.) In the letter, Plaintiffs informed Allstate that they were making a claim for property damage and loss of rent. (*Id.*) Allstate received the letters on September 9 and September 11, 2014. (*Id.* ¶ 58, Ex. G.) On September 12, 2014 Allstate agent Thomas McKeon responded to Plaintiffs' claim by e-mail requesting a customer survey. (*Id.* ¶ 59, Ex. H.)

On September 24, 2014, Radnor Township sued Plaintiffs in the Delaware County Court of Common Pleas contending that the Dohertys failed to permit the Township to inspect the properties in accordance with the Township's Rental Housing Code. (*Id.* ¶ 50, Ex. F.)

On October 4, 2014, after receiving no further communications from Allstate, Doherty faxed the Allstate agent another letter asking the company why it had failed to respond and asking how the claim could be adjusted. (*Id.* ¶ 61–62, Ex. I.) She also sent a copy of the letter by certified mail to Allstate's Corporate Office. (*Id.* ¶ 64, Ex. I.) Allstate's agent received Plaintiffs' letter the same day. (*Id.* ¶ 63, Ex. I.) "At all times material, Plaintiffs expected that Defendant would respond to their October 4, 2014 letter." (*Id.* ¶ 65.) Allstate did not respond to Plaintiffs' follow-up request. (*Id.* ¶ 66.)

Doherty hired John Rush ("Rush"), a home repair contractor, to assess the damages, prepare "Estimates of Repairs," and make repairs to the premises. (*Id.* ¶¶ 49, 68, Ex. J.) Rush worked for Doherty from October 2014 through May of 2015 during which time he performed $32,252.00 worth of repairs. (*Id.* ¶ 68–69, Ex. J.) In November, Plaintiffs received inquiries about leasing the premises. (*Id.* ¶ 71.) The prospective tenants inspected the property on several occasions, expressed their satisfaction and between February and June 2015, paid their respective portions of the security deposits, accepted the keys and moved in. (*Id.* ¶ 72, Ex. K.)

On June 12, 2015 Doherty wrote Allstate again, referencing her prior letters and stating that her Allstate agent was aware of the submitted claim. (*Id.* ¶ 74–77, Ex. L.) In the letter, Doherty asked Allstate to respond within 10 days and stated that her damages to date totaled $69,392.00, including $32,252 for repairing the properties, $3,140 for replacing damaged or missing appliances and fixtures, and $34,000 in lost rent. (*Id.* ¶ 79, Ex. L.) The letter reached Allstate's insurance agent by facsimile the same day and the Corporate Office by certified mail on June 16, 2015. (*Id.* ¶¶ 79, 81, Ex. L.) Allstate did not respond.

On July 2, 2015 Radnor Township notified Plaintiffs that their rental licenses for the properties had been placed in nonrenewal status because the properties did not comply with local

building codes and had not been inspected for several years. (*Id.* ¶ 84, Ex. M.) The letter mandated that the units be vacated immediately. (*Id.*) On July 11, 2015 the tenants complained of problems with the properties. (*Id.* ¶ 86.) Plaintiffs allege that the problems the tenants claimed to have "were untrue and not even possible" and that "[a]t all times material, Plaintiffs sought to resolve the alleged violations asserted by the Township of Radnor." (*Id.* ¶ 85–86.) The non-renewal status of Plaintiffs' rental licenses and the resultant lockout nevertheless remain in effect. (*Id.* ¶ 87.)

On July 30, 2015 Doherty wrote her Allstate agent and the company's Corporate Office yet again, complaining about Allstate's refusal to acknowledge the claim. (*Id.* ¶ 91, Ex. N.) She also told the insurer that the Plaintiffs' damages were now almost $400,000.00 and that Radnor Township's lawsuit against them triggered Allstate's duty to defend. (*Id.* ¶ 89–91, Ex. N.) On Friday, August 7, 2015 Doherty received a phone call and voicemail message from Allstate's assigned Claims Adjuster, Tiara Myrick ("Myrick"). (*Id.* ¶ 93.) In the message, Myrick provided Plaintiffs with their First Party Claim Number, 0379581976, and told Doherty she would call her back. (*Id.* ¶ 93.) Myrick called Doherty on Tuesday, August 11, 2015, telling Doherty the Plaintiffs' claim had been classified as a residential homeowners claim. (*Id.* ¶ 95.) Doherty immediately confirmed the conversation in a letter and sent it to her Allstate agent by fax and to Allstate by certified mail. (*Id.* ¶ 96, Ex. O.)

Allstate has refused to pay any benefits to Plaintiffs under the policy, and Plaintiffs now contend they have suffered losses and damages in excess of $500,000.00. (*Id.* ¶ 101.)

**II.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level...on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (2007) (citations and alterations omitted); *see Iqbal*, 556 U.S. at 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. *See Connelly*, 809 F.3d at 787. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

**III.**

In Count III of their amended complaint, Plaintiffs contend that Allstate violated a number of the UTPCPL's provisions.[1] (Pl's Am. Compl. (ECF No. 66), at ¶ 118.) In Count II, however, Plaintiffs also purport to state a claim for bad faith pursuant to 42 Pa.C.S.A. § 8371. The factual allegations made to support Counts II and III are virtually identical. The allegations can be divided into two distinct categories: one accusing Allstate of misconduct during the solicitation and/or sale of the insurance policy and a second concerning Allstate's alleged misconduct during the claims handling process. The UTPCPL focuses primarily on the former while the bad faith statute applies to the latter. In its motion to dismiss, Allstate contends that Plaintiffs' claim under the UTPCPL must be dismissed because Plaintiffs have, among other things, failed to satisfy the requirements of common law fraud or allege the element of justifiable reliance.

**A.**

The purpose of the UTPCPL is to protect consumers from "fraud and unfair or deceptive business practices." *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.,* 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (citing *Commonwealth ex rel. Creamer v. Monumental Prop., Inc.,* 329 A.2d 812 (Pa. 1974)). The Pennsylvania Supreme Court has emphasized that the underlying foundation of the UTPCPL is fraud prevention; the law "attempts to place in more

[1] Specifically, plaintiffs assert violations of subsections (i), (ii), (vii), (ix), (x), (xiv), and (xxi), which prohibit in relevant part: (i) passing off goods or services as those of another; (ii) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; (vii) representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; (ix) advertising goods or services with intent not to sell them as advertised; (x) advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity; (xiv) failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made; and (xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201–2(4)(i), (ii), (vii), (ix), (x), (xiv), & (xxi). Despite the fact that Plaintiffs cite various subsections of the statute, they proceed primarily under subsection (xxi), the statute's "catch-all" provision.

equal terms seller and consumer [and is] predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace." *Creamer*, 329 A.2d at 816 (footnote omitted). By its own terms, the UTPCPL prohibits "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce" and provides a private right of action to any person who "purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property . . ." 73 P.S. § 201–1, –9.2(a).

The UTPCPL "applies to the sale of an insurance policy" and "conduct surrounding the insurer's pre-formation conduct." *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016). Plaintiffs contend that Allstate misrepresented the benefits, advantages, conditions and terms of its "All-Perils" Landlord Package Insurance Policy and induced Plaintiffs to believe that the policy would cover the types of losses that are at issue in this case. (*See* Pl.'s Am. Compl. ¶ 118(a), (b).) Plaintiffs further allege that Allstate misrepresented pertinent facts, policy provisions and conclusions of law when it characterized the insurance policy as an "All-Perils" or All-Risk" Policy and advertised the policy as such with no intentions to honor it. (*See* Pl.'s Am. Compl. ¶ 118(e), (f).) As stated above, allegations of this nature, relating to alleged misconduct in the characterization, solicitation and sale of the insurance policy are properly addressed under the UTPCPL. The Court now evaluates whether the Plaintiffs have plead with the requisite particularity all of the required elements of a claim under the statute.

**i.**

A plaintiff may state a cause of action under the UTPCPL by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct. *Vassalotti v. Wells Fargo Bank*,

*N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010) (citing *Hunt*, 538 F.3d at 219). As Plaintiffs have not alleged that Allstate engaged in fraudulent behavior, the Court will analyze their claim under the deceptive conduct prong. A plaintiff alleging deceptive conduct must satisfy three elements:

> First, a plaintiff must allege facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances. Next, the plaintiff must allege justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct. Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss.

*Vassalotti*, 732 F. Supp. 2d at 510 (citing *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009), 647 F. Supp. 2d at 470); *see also Santana Prods., Inc.*, 401 F.3d at 136, *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 294 (W.D. Pa. 2014).

A deceptive act is one that is "likely to deceive a consumer acting reasonably under similar circumstances." *Seldon*, 647 F. Supp. 2d at 470 (citing *Hunt,* 538 F.3d at 223). The UTPCPL has enumerated twenty practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices" and contains a catch-all provision prohibiting "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4).

In *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013), the Third Circuit Court of Appeals predicted how the Pennsylvania Supreme Court would interpret "deceptive conduct." The court examined the Pennsylvania Superior Court's decision in *Fazio v. Guardian Life Ins. Co.*, 62 A.3d 396 (Pa. Super. 2012), and noted that the "district court decisions on which *Fazio* relied suggest that deceptive conduct does not require proof of the elements of common law fraud, but that knowledge of the falsity of one's statements or the misleading

quality of one's conduct is still required." *Belmont*, 708 F.3d at 498. The Third Circuit also cited *Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008), for the proposition that a deceptive act is "the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it." *Belmont*, 708 F.3d at 498 (internal quotations omitted). *But see Santana Prods., Inc.*, 401 F.3d at 137 ("An action for fraud always requires the plaintiff to prove scienter, whereas the Lanham Act does not. The UTPCPL is in the middle. It encompasses causes of action in which the plaintiff must prove intent and causes of action in which the plaintiff need not prove intent.")

Plaintiffs must also plead the traditional common law elements of justifiable reliance and causation. *See, e.g.*, *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 202–03 (Pa. 2007), *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008), *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 154 (Pa. Super. 2012). A plaintiff must show that "he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendant's] misrepresentation." *Hunt*, 538 F.3d at 223 n.14. In *Laidley v. Johnson*, No. 09–395, 2011 WL 2784807 (E.D. Pa. July 11, 2011), the plaintiffs claimed that the lender to whom they had executed a mortgage violated the UTPCPL's catch-all provision by under-disclosing finance charges. While the plaintiffs asserted they had justifiably relied on representations the lender made on an official form stating what the finance charges would be, the court found that they had not adduced sufficient evidence of justifiable reliance. *Id.* at *9. The court explained that "[t]o show justifiable reliance a plaintiff must provide evidence demonstrating how his knowledge of a mortgage loan's actual terms would have altered his decision to execute the mortgage." *Id.*; *cf. Levine v. First American Title Ins. Co.*, 682 F. Supp.

2d 442, 467 (E.D. Pa. 2010) (holding plaintiffs successfully alleged justifiable reliance where plaintiffs stated they would not have paid a higher premium for title insurance if they had known the actual rate). Finally, a plaintiff must show "that his or her justifiable reliance caused ascertainable loss," *Laidley*, WL 2784807, at *2, *i.e.*, that she suffered "an ascertainable loss *as a result of* the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001).

Here, Plaintiffs allege that Allstate "published and issued written documentation as part of its sales presentation to solicit and induce them," "misrepresented the benefits, advantages, conditions, and terms of the policy," and "misrepresented the true nature of its representations of its 'All-Perils' Landlord Package Insurance Policy." (Pl.'s Am. Compl. ¶ 118(a), (b).) In so doing, Allstate "induced Plaintiffs to rely upon its representations so Plaintiffs believed that Defendant's 'All-Perils' Landlord Package Insurance Policy covered losses such as those which Defendant is now disputing." (Pl.'s Am. Compl. ¶ 118(b).)

Plaintiffs have not plead sufficient facts to support these allegations. General allegations that defendant engaged in deceptive conduct without specifying what that deceptive conduct actually was are insufficient; a plaintiff must identify the specific act, omission or misrepresentation "in order to demonstrate that such confusion or misunderstanding was caused by certain acts or omissions on the part of the Defendants." *Farmerie v. Kramer*, No. 2071 WDA 2014, 2015 WL 6507844, at *9 (Pa. Super. Oct. 27, 2015). Plaintiffs have "not pled or argued any specific act or omission . . . that would establish that her confusion or misunderstanding was a result of said act or omission." *Id.* Although Plaintiffs claim that Allstate "published and issued written documentation as part of its sales presentation," they have neither attached such documentation to their amended complaint nor explained what Allstate said

or specifically how the company misrepresented policy terms. Plaintiffs have alleged that they believed the policy would cover "losses such as those which Defendant is now disputing," but have failed to specify the deceptive conduct or intentional misrepresentations by Allstate which led them to believe that losses of this kind would be covered.

Plaintiffs have also failed to plead justifiable reliance and causation. In *Seldon*, the plaintiffs "[did not even describe the actual terms, conditions, or characteristics of the [policy] and in what respect defendants misrepresented these aspects of the [policy]." 647 F. Supp. 2d at 470. The court accordingly held that "[w]ithout these allegations, plaintiffs fail to plead justifiable reliance as they simply do not set forth how [their] knowledge [of the loan's actual terms] would have changed [their] conduct." *Id.* at 470–71 (quoting *Hunt*, 538 F.3d at 227) (internal quotations omitted). Plaintiffs' allegations in this case suffer from the same defect. They contend that Allstate "misrepresented pertinent facts or policy provisions within Plaintiffs' policy issued by Defendant, as well as conclusions of law, when it characterized the insurance policy at issue as an 'All-Perils or All-Risk Policy.'" (Pl.'s Am. Compl. ¶ 118(f).) They fail, however, to allege with any particularity which facts, policy provisions or conclusions of law Allstate purportedly misrepresented as well as the specific manner in which such facts, provisions, or conclusions were misrepresented to them by Allstate. Absent such factual allegations, it is unclear what particular misrepresentations Plaintiffs relied upon and how their knowledge of the actual terms or nature of the insurance policy would have affected their decision to purchase the policy in the first place.

Plaintiffs similarly allege that Allstate "advertised its insurance goods and services as an 'All Perils' insurer within [sic] the intent to not sell those services as advertised. In particular, Defendant misrepresented pertinent facts of policy provisions within Plaintiffs' policy but had no

intentions to honor it." (Pl.'s Am. Compl. ¶ 118(e).) Plaintiffs claim that this alleged conduct violates the UTPCPL's prohibition on "[a]dvertising goods or services with intent not to tell them as advertised." 73 P.S. § 201–2(4)(ix). This provision applies only to claims of false advertising. *Weinberg v. Sun Co.*, 740 A.2d 1152, 1167 (Pa. Super. 1999), *rev'd on other grounds,* 565 Pa. 612, 777 A.2d 442 (2001), *Karlsson v. FDIC,* 942 F. Supp. 1022, 1023 (E.D.Pa.1996), *aff'd,* 107 F.3d 862 (3d Cir.1997). To plead and prove such a claim, a plaintiff must show: (1) "a defendant's representation is false"; (2) "it actually deceives or has a tendency to deceive"; and (3) "the representation is likely to make a difference in the purchasing decision." *Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa. Super. 1999) (listing elements for violation of § 201–2(4)(v)); *see Weinberg*, 740 A.2d at 1167 (stating same elements apply to § 201–2(4)(ix)).

Plaintiffs have not done so. First of all, the allegations that Allstate misrepresented the benefits, conditions, and terms of the insurance policy cannot constitute a violation of the false advertising prohibition because representations made by "individual employees or agents of defendants" do not constitute advertising. *See Seldon*, 647 F. Supp. 2d at 466. Moreover, Plaintiffs' assertion that "Defendant misrepresented pertinent facts or policy provisions within Plaintiffs' policy but had no intentions to honor it" again fails to specify the particular facts or policy provisions that were falsely advertised and whether such representations were deceitful and/or made a difference in the purchasing decision.

Thus, with respect to the factual allegations that Allstate engaged in deceptive acts in the characterization and solicitation of the insurance policy, Plaintiffs' amended complaint lacks the specificity required to survive Allstate's motion to dismiss.

**B.**

The remainder of Plaintiffs' allegations relate to Allstate's conduct during the claims handling process. Plaintiffs contend that Allstate violated the UTPCPL by failing to: take proper actions to acknowledge, investigate or adjust Plaintiffs' claim; fairly and objectively evaluate the claim; have a reasonable basis for its decision to deny coverage; settle the claim when its liability became reasonably clear; timely process the claim; and forcing Plaintiffs to bring suit and incur substantial costs in order to protect their rights. (*See* Pl.'s Am. Compl. ¶ 118(c), (d), (g)–(n).) All these allegations pertain to how Allstate handled the Plaintiffs' claim.

While the UTPCPL applies to the sale of an insurance policy, "[i]t does not apply to the handling of insurance claims." *Kelly*, 159 F. Supp. 3d at 564 (citing *Gibson v. Progressive Specialty Ins. Co.*, No. 15–1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015)). The bad faith statute, on the other hand, "provides the exclusive statutory remedy applicable to claims handling." *Id.* This framework makes sense because the bad faith statute "establishes a separate and independent cause of action for bad faith claims against insurance companies related to their handling of an insured's claim." *Gibson*, 2015 WL 2337194, at *2 (citing *Toy*, 928 A.2d at 199–200).

Courts have defined bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d. Cir. 2015) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994)). *See also Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164,

1177 (Pa. Super. 2012) ("[T]he focus in section 8371 claims cannot be on whether the insurer *ultimately* fulfilled its policy obligations . . . . [T]he issue in connection with section 8371 claims is the *manner* in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim. . . "). "Bad faith conduct also includes lack of good faith investigation into facts, and failure to communicate with the claimant." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. 2009) (citing *Condio v. Erie Ins. Exchg.*, 899 A.2d 1136, 1142 (Pa. Super. 2006)).

As the Supreme Court of Pennsylvania stated, the bad faith statute was enacted specifically to "capture[ ] those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance policy." *Toy*, 928 A.2d at 199. Based on the text and purpose of the bad faith statute, the *Toy* Court held that § 8371 was enacted solely to address an insurer's bad faith handling of claims and was thus *not* intended to provide relief "to an insured alleging that his insurer engaged in unfair or deceptive practices in *soliciting the purchase* [of] a policy." *Id.* at 200 (emphasis added). The *Toy* Court "appeared to recognize a legislative scheme in which misconduct relating to the selling of a policy is governed by the [UTPCPL] and misconduct related to the handling of claims allegedly due under the policy is governed by the bad faith statute." *Gibson*, 2015 WL 2337194, at *4 (quoting *Bodnar v. State Farm Mutual Ins. Co.*, No. AR08–001337 (C.P. Allegheny Co. Oct. 27, 2008)).

Bringing a claim under the UTPCPL requires a plaintiff to plead and prove the common law elements of justifiable reliance and causation. This further supports the conclusion that allegations of misconduct in the claims handling process are not actionable under the UTPCPL. With respect to Plaintiffs' allegations that Allstate mishandled their claim and interpreted the

policy unfairly, Plaintiffs have not plead justifiable reliance and it would seem difficult if not impossible for them to do so. Several courts in this district have dismissed UTPCPL actions concerning misconduct in the claims handling process because a "plaintiff could not justifiably have relied on the way [d]efendants handled her claim" because "[o]n issues such as liability, damages, coverage or even procedure, [UIM] claims . . . are inherently and unavoidably arm's length and adversarial." *Smith v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 508445, at *4 (E.D. Pa. 2012), *aff'd by Smith v. State Farm Mut. Auto Ins. Co.*, 506 Fed. App'x 133, 136 (3d Cir. 2012). *See also Monck v. Progressive Corp.*, No. 15–250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015); *Murphy v. State Farm Mut. Auto. Ins. Co.*, No. 16–2922, 2016 WL 4917597, at *6 (E.D. Pa. Sep. 15, 2016).[2]

Count III of the amended complaint is dismissed because the plaintiffs have not alleged sufficient facts to show how Allstate engaged in deceptive conduct during the solicitation or sale of the insurance policy. Plaintiffs will be allowed one more opportunity to do so. Allstate's alleged conduct during the claims handling process is more appropriately addressed in Count II.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

[2] While other courts have confronted the same issue without stating explicitly that a plaintiff cannot establish justifiable reliance in the context of alleging mishandling by an insurer, those decisions also reflect the fact that it is difficult if not impossible to do so. *See Lombardi v. Allstate Ins. Co.*, No. 08–949, 2009 WL 1811540, at *4 (W.D. Pa. June 23, 2009) (plaintiff's allegations of mishandling were sufficient to show potentially actionable misfeasance but granting motion to dismiss because plaintiff had not alleged sufficient facts to show justifiable reliance); *Tippett v. Ameriprise Ins. Co.*, No. 14–4710, 2015 WL 1345442, at *2 (E.D. Pa. Mar. 25, 2015) (dismissing claim based on allegations that insurer conducted an insufficient investigation and failed to prepare a fair estimate of the damages because plaintiff did not allege facts showing that they believed or relied on any misrepresentations); *Lites v. Great Am. Ins. Co.*, No. 00-CV525, 2000 WL 875698 (E.D. Pa. June 23, 2000) (denying motion to dismiss because plaintiff's allegations of mishandling could constitute the improper performance of a contractual obligation and deceptive practices by the defendant with no discussion of the required element of justifiable reliance); *Silberg v. Employers Mut. Cas. Co.*, No. 00–CV–3587, 2001 WL 51102, at *3 (E.D. Pa. Jan. 22, 2001) (finding plaintiff's allegations that insurer misrepresented that it would promptly evaluate and respond to reasonable claims and pay rightful claims sufficient to withstand motion to dismiss with no discussion of justifiable reliance element).