IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY LOU DOHERTY et al., *Plaintiffs*, v. ALLSTATE INDEMNITY COMPANY, *Defendant*. | CIVIL ACTION NO. 15-05165 |

PAPPERT, J. September 30, 2019

## MEMORANDUM

This is an unfortunate and all too predictable end to a lawsuit that should have never been filed, much less taken all the way to the Supreme Court of the United States. Mary Lou Doherty, joined later by her co-counsel, Joseph Mirarchi, sued Allstate claiming that it had to compensate her for the neglect and squalid conditions that led Radnor Township to revoke the rental licenses for two of her rental properties. After Allstate endured years of meritless, inherently contradictory and ever-changing allegations, the Court granted summary judgment in Allstate's favor on all Doherty's claims. *See* (Mem. Granting Summ. J., ECF No. 175). Doherty and Mirarchi appealed the Court's decision, which the Third Circuit Court of Appeals affirmed in all respects. *See Doherty v. Allstate Indem. Co.*, 734 F. App'x 817 (3d Cir.) (unpublished), *cert. denied* 139 S. Ct. 594 (2018). Believing that the Supreme Court would want to delve into the interpretation of a standard Landlords' Package Insurance Policy, the duo petitioned for a writ of *certiorari*, which the Court denied. *See* 139 S. Ct. 594 (2018). Allstate now

1

moves for sanctions against Doherty[1] and Mirarchi under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The Court grants the Motion in part and denies it in part for the reasons that follow.

I

The Court has already exhaustively detailed this case's factual and procedural history, *see* (Mem. Granting Summ. J. 2–27), and need not do so again. For present purposes, Doherty is a self-described "slumlord" who over the past forty-five years has owned at least eight and perhaps as many as twenty rental properties at a time, managed roughly forty tenants per year and purchased numerous insurance policies. (Doherty Dep. 241:1–5, ECF No. 132-85); *see* (Tr. of Sanctions Hr'g 45:24–25, 47:12–14, 48:7–17). She has also clashed repeatedly with Radnor Township officials over the conditions of some of her properties. *See, e.g.*, (Radnor Suit Against Doherty, ECF No. 93-5); (Notice of Code Violations, ECF No. 184-27).

Doherty is more than a sophisticated, experienced landlord—she is a highly educated professional. She received a Bachelor of Science in Economics from the University of Pennsylvania, a Master of Business Administration from the Wharton School and a law degree from the University of Virginia School of Law. *See* (Mem. Granting Summ. J. 19 n.21). Since being admitted to the Pennsylvania bar in 1974, Doherty has maintained an active law license and a law office. *See* (Tr. of Rule 16 Conference 2:20, ECF No. 19); (Doherty Pa. Bar Records, ECF No. 184-4). In this case, she formally appeared as attorney on behalf of herself and her sons. *See* (Notice of

---

[1] Although James and John Doherty—Mary Lou Doherty's sons—were named plaintiffs, neither participated in this suit. *See* (Mem. Granting Summ. J. 1 n.1, ECF No. 175). And Allstate does not ask for sanctions against either James or John. *See* (Tr. of Sanctions Hr'g 6:14–18, ECF No. 202). All references to "Doherty" are to Mary Lou Doherty, not her sons.

2

Doherty's Appearance, ECF No. 9). And though she withdrew as counsel for her sons, Doherty remains as counsel of record and still represents herself. *See* (Notice of Doherty's Partial Withdrawal, ECF 91).

Factually, legally and otherwise, Doherty's lawsuit was meritless *ab initio*. Her Allstate insurance policy covered "sudden and accidental direct physical loss to property." (Insurance Policy 7, ECF No. 184-57). It did not cover vandalism or damage caused by tenants or, as her favorite theory went, by a rogue Radnor Township inspector. *See* (*id.* at 9); (Tr. of Rule 16 Conference 13:11–24). Yet in Doherty's complaint, the two alleged "dates of loss" were the dates on which (1) a Radnor inspector notified Doherty of the code violations at her properties, and (2) Doherty learned that the Township locked her out of the properties because of the code violations. *See* (Mem. Granting Summ. J. 20). This case never had anything to do with Allstate; it was about Doherty's feud with Radnor Township. *See, e.g.*, (Tr. of Rule 16 Conference 11:9–13:21, 18:19–24); (Tr. of Sanctions Hr'g 50:18–51:1)[2].

About nine months into the case, Mirarchi, a purportedly experienced insurance litigator, signed on as Doherty's co-counsel.[3] *See* (*id.* 58:18–23); (Notice of Mirarchi's Appearance, ECF No. 36). By that time, Allstate had already sent Doherty several letters asking her to withdraw the lawsuit and threatening to move for sanctions. *See, e.g.*, (Apr. 4, 2016, Letter to Doherty, ECF No. 184-17). The Court also had warned Doherty during its first interaction with her that, so far as the Court could understand

---

[2]   Doherty would even claim later that Allstate had a duty to defend her against Radnor Township's lawsuit. *See* (Second Am. Compl. ¶¶ 125–26, ECF No. 92-1).

[3]   In March of 2019, after Allstate moved for sanctions, the Pennsylvania Supreme Court disbarred Mirarchi for conduct unrelated to this case. *See* (Notice of Mirarchi's Disbarment, ECF No. 195). He also recently agreed to suspend his license to practice before the United States District Court for the Eastern District of Pennsylvania. *See* (Tr. of Sanctions Hr'g at 3:6–19).

3

it, her suit lacked a legal or factual basis. *See* (Tr. of Rule 16 Conference 30:22–31:6). Nevertheless, Mirarchi took the case and turned it into an "unmanageable mess." (Tr. of Mar. 7, 2017, Hr'g 53:52–54:1, ECF No. 173.)

After prevailing at every level, Allstate moved for sanctions. Doherty and Mirarchi each responded to the Motion, *see* (ECF Nos. 191, 192-1); Doherty added a supplemental response, *see* (ECF No. 201). The Court then held a hearing on the Motion, during which Doherty and Mirarchi had ample opportunity to address Allstate's allegations and the Court's concerns. *See* (ECF No. 202).

II

A

Under Rule 11, attorneys must certify that their representations to a court are made for a proper purpose and have factual and legal bases. *See* Fed. R. Civ. P. 11(b). If a court finds that an attorney violated Rule 11(b), it may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* 11(c)(1). Under the "supervisory rule," a Rule 11 motion filed after the district court entered final judgment is untimely. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988). A court may not *sua sponte* impose Rule 11 sanctions after final judgment; it must "resolve any Rule 11 issues prior to or concurrent with its resolution of the merits of the case." *Simmerman v. Corino*, 27 F.3d 58, 63 (3d Cir. 1994).

The supervisory rule renders Allstate's Motion for Rule 11 sanctions untimely. Allstate filed its Motion almost two years after the Court entered final judgment. *See* (Order, ECF No. 176); (Allstate's Mot. for Sanctions). That the Court had dismissed without prejudice Allstate's earlier motion for sanctions is immaterial. *Cf. Gary v.*

4

*Braddock Cemetery*, 517 F.3d 195, 203–04 & n.7 (3d Cir. 2008) (remanding for district court to rule on Rule 11 motion that had been dismissed without prejudice but was renewed and pending when the court entered final judgment).

B

1

Unlike Rule 11, § 1927 is not subject to the supervisory rule. *See In re Shaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008). Rather, a § 1927 motion is timely if "filed within a reasonable time." *Id.* What constitutes "a reasonable time" is unclear. *Cf. id.* (deeming nine-day delay reasonable but declining to set "the outer limits of 'reasonable'"). While the Third Circuit has not specified the point from which courts measure if a party's delay in filing a § 1927 motion was reasonable, "sanctions under § 1927 can 'normally' only be determined when the case is over." *Id.* This case ended when the Supreme Court denied Doherty's petition for *certiorari*. *Cf. Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337 (3d Cir. 1982) (per curiam) (holding "that the Supreme Court's denial of certiorari ended this litigation" for purposes of assessing "reasonable time" under Fed. R. Civ. P. 60). Allstate filed its Motion roughly ten weeks later.

Although a ten-week delay may not always be reasonable, it was here.[4] *Cf. Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir. 1959) ("What constitutes a

---

[4] *Compare Cox v. Horn*, 757 F.3d 113, 116 (3d Cir. 2014) (deeming ninety-day delay reasonable in the Rule 60 context), *with Martinez-McBean v. Gov't of Virgin Islands*, 562 F.2d 908, 913 n.7 (3d Cir. 1977) (doubting that a two-and-a-half-year delay was reasonable); *Mitchell v. Fuentes*, 761 F. App'x 109, 112 (3d Cir. 2019) (unpublished) (agreeing that two-year delay was unreasonable); *Lewis v. Warden Canaan USP*, 749 F. App'x 98, 99 (3d Cir. 2019) (unpublished) (per curiam) (same for one-year delay).

Even if Allstate's Motion was not filed within a reasonable time, the Court could have used its inherent power to impose the same sanctions on Doherty and Mirarchi. *See In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188–89 (3d Cir. 2002) (discussing a district court's inherent power to sanction). Their conduct throughout this litigation, taken as a

5

'reasonable time' under Rule 60(b) is to be decided under the circumstances of each case."). While Allstate could have sought sanctions sooner after the case's conclusion, any delay in doing so neither prejudiced nor unfairly surprised Doherty or Mirarchi, who had known for years that Allstate would seek sanctions if they persisted. *See, e.g.*, (Apr. 4, 2016, Letter to Doherty).

2

A court may order "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to pay "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[5] 28 U.S.C. § 1927. Before doing so, however, a court must find that the "attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002)).

Running through countless stop signs with utter disregard for the civil justice system, Doherty and Mirarchi turned a simple (though baseless) insurance coverage case into one with over 200 docket entries. Before Mirarchi signed on, Doherty moved to remand, *see* (ECF No. 9), and her conduct drove Allstate to move for sanctions, *see* (ECF No. 29). Together, Mirarchi and Doherty amended or moved to amend the

---

whole, proves that they "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 189 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Because the Court believes that sanctions under § 1927 are available and adequate, it need not invoke its inherent powers. *See id.*

[5] Doherty is an attorney for § 1927 purposes. She has an active law license, *see* (Doherty Pa. Bar Records), formally appeared as an attorney in this case, *see* (Notice of Doherty's Appearance), and remains counsel of record, *see* (Notice of Doherty's Partial Withdrawal). *See Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992) (holding § 1927 applied to party "who, though acting *pro se*, was a lawyer"); *Feingold v. Graff*, 516 F. App'x 223, 229 n.9 (3d Cir. 2013) (unpublished) (citing *Sassower* and doubting whether § 1927 applies "to non-lawyer, pro se litigants").

complaint four times. *See* (ECF Nos. 41, 66, 92, 102). They filed extraneous or untimely materials twenty-three times, *see* (ECF Nos. 46, 47, 48, 56, 58, 59, 62, 72, 73, 87, 93, 96, 122–24, 135, 136, 138, 144, 146, 147, 162, 167), moved for sanctions against Allstate twice, *see* (ECF Nos. 71, 127), and burdened Allstate with another dozen filings, *see* (ECF Nos. 42, 49, 50, 60, 98, 106, 134, 156–59, 185). Their conduct forced Allstate to move to compel discovery responses and quash subpoenas. *See* (ECF Nos. 63, 70, 108–11). And their baseless and shape-shifting suit compelled Allstate to file multiple dispositive motions. *See* (ECF Nos. 67, 99, 132). These fifty-two filings—and the responses they spawned—show the extent to which Doherty and Mirarchi multiplied the proceedings.[6]

Doherty and Mirarchi's multiplication efforts were unreasonable and vexatious. *See Vexatious*, *Black's Law Dictionary* (11th ed. 2019) (defining "vexatious" as conduct "without reasonable or probable cause or excuse"). Doherty's longstanding feud with Radnor Township sparked each of the fifty-two filings just mentioned.[7] To try to bring that feud within the ambit of Doherty's insurance policy, Doherty and Mirarchi argued—for years—that Doherty had a so-called "all-perils" policy with Allstate. *See, e.g.*, (Second Am. Compl. ¶ 20); (Tr. of Mar. 7, 2017, Hr'g 12:10–22). That argument had no factual or legal basis. *See generally* (Insurance Policy). Even after the Court

---

[6] The Court does not consider Doherty's initial complaint to have multiplied the proceedings. *See In re Schaefer*, 542 F.3d at 101 ("[Section] 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case."). Consistent with that reasoning, the Court excludes Allstate's initial motion for summary judgment, (ECF No. 34), from a later sanctions award.

[7] *See* (Tr. of Sanctions Hr'g 50:18–23); (Doherty Dep. 32:5–33:8, 34:3–9, 81:18–82:15); (Tr. of Rule 16 Conference 5:2–19, 8:13–9:4, 11:19–12:6, 13:5–21, 17:2–12, 18:14–24, 20:13–23); (Doherty Letter to Allstate, ECF No. 132-80); (Pls. Answer to Interrogs. ¶¶ 10, 13, 15, ECF No. 29-12).

pointed that out, *see* (Tr. of Mar. 7, 2017, Hr'g 12:10–22, 15:2–16:22); (Tr. of Rule 16 Conference 27:22–28:6), Doherty and Mirarchi persisted, *see Doherty*, 734 F. App'x at 821. This bad faith and willful blindness tainted everything Doherty and Mirarchi did. *See, e.g.*, (Subpoena to Forry, ECF 106-1); (Tr. of Mar. 7, 2017, Hr'g 50:22–54:8). In fact, some motions were so untethered to reality that even they had to withdraw the filings when confronted by the Court. *See, e.g.*, *(id.* at 42:16–22, 43:20–44:3, 61:19–22, 65:6–8, 68:14). All told, Doherty and Mirarchi threw every wild, unsupported accusation they could dream up against the wall; it took the Court and Allstate four years and hundreds of pages to clean up the mess. *See generally* (Mem. Granting Summ. J.).

That clean-up effort and the conduct that necessitated it burdened the civil justice system for years, wasting the time, energy and money of those forced to endure it. Allstate spent over $230,000 trying to end the case, (Allstate's Status Report, ECF No. 200), and the Court spent countless hours decoding Doherty and Mirarchi's nonsensical theories and trying not to drown in the flood of filings.

Doherty and Mirarchi acted with willful bad faith. The case was meritless. Doherty knew as much all along, and Mirarchi knew or should have known it too. *See In re Prudential*, 278 F.3d at 188 (noting that an indicator of bad faith is that the claims were meritless and "counsel knew or should have known this"). The Court told Doherty so in October of 2015. *See* (Tr. of Rule 16 Conference 27:22–28:6). Allstate repeatedly did so as well. *See, e.g.*, (Apr. 4, 2016, Letter to Doherty); (Dec. 17, 2015, Letter to Doherty, ECF No. 184-16). The Court felt compelled to allow Doherty and Mirarchi to assert various claims and develop a record in the off chance that perhaps

8

some of the claims would have some factual or legal basis.  *See* (Order, ECF No. 90); *In re Schaefer*, 542 F.3d at 102 ("[I]t is normally best to wait until the end of litigation to precisely determine what claims were non-viable as well as when it was that they became non-viable." (quotation omitted)).  But hindsight proved the Court's fears correct—with Mirarchi's help, Doherty hijacked the litigation process in an effort to settle old scores with Radnor Township.  *See* (Doherty Dep. 32:5–33:8, 34:3–9, 81:18–82:15); *In re Prosser*, 777 F.3d at 162 (listing improper purpose as sign of bad faith).  The record confirms a finding that Doherty and Mirarchi each acted in bad faith; attorneys acting in good faith do not, among other things, file baseless motions for sanctions, *see* (ECF Nos. 71, 127), or try to amend a complaint to add "an indispensable party" who was obviously dispensable, *see* (Mem. in Supp. Mot. for Leave to File Third Am. Compl., ECF No. 102-1); (Tr. of Mar. 7, 2017, Hr'g 37:23–40:16).

The bad faith that appears on the cold record is augmented by the Court's interactions with Doherty and Mirarchi over the years.  *See In re Prudential*, 278 F.3d at 189 ("An implicit finding of bad faith will support sanctions . . . .").  Doherty is intelligent—and quite experienced at working the system.  She is skilled in deception, practiced at obfuscation and imbued with an unshakable belief that she can scheme or argue her way out of anything.  What's worse, she believes that she can abuse her law license, and the law itself, without question or ramifications.  This entire case was her way to try to con Allstate into paying for damage most likely caused by Doherty's own neglect of her properties, but certainly *not* caused by a "sudden and accidental loss" as defined by the policy.  *See* (Mem. Granting Summ. J. 52).  Mirarchi may lack Doherty's malice, but he willingly enabled her worst instincts.  Even at the sanctions hearing, he

9

regurgitated the same baseless theories to justify his complicity in this suit. *See, e.g.*, (Tr. of Sanctions Hr'g 53:7–54:25). Such persistent feigned naiveite—viewed over the entire litigation—proves that Mirarchi acted not as an overzealous advocate but with willful bad faith. *See, e.g.*, (*id.* at 56:10–15); *Bad Faith*, *Black's Law Dictionary*, *supra*, (defining "bad faith" as "[d]ishonesty of belief, purpose, or motive").

Sanctions under § 1927 are reserved for "instances of a serious and studied disregard for the orderly process of justice." *In re Prosser*, 777 F.3d at 161 (quoting *Lasalle*, 287 F.3d at 288). Viewed in isolation, the fifty-two filings identified above could fit that description, even though zealous advocacy often entails multiple filings. Taken collectively, however, they leave no doubt of Doherty's and Mirarchi's willful bad faith. Drawing on its repeated interactions with Doherty and Mirarchi and considering their conduct over the entire litigation, the Court finds that each of the fifty-two filings played a part in Doherty and Mirarchi's larger willful effort to unreasonably and vexatiously multiply the proceedings.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.