IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY LOU DOHERTY, *et al.*, *Plaintiffs*, v. ALLSTATE INDEMNITY COMPANY, *Defendant*. | CIVIL ACTION NO. 15-05165 |

PAPPERT, J.                                                                December 17, 2019

## MEMORANDUM

After finding that Mary Lou Doherty and Joseph Mirarchi unreasonably and vexatiously multiplied the proceedings, the Court granted Allstate's motion for sanctions under 28 U.S.C. § 1927. The Court ordered that Doherty and Mirarchi pay Allstate's reasonable excess costs, expenses and attorneys' fees associated with fifty-two specific docket entries. After reviewing Allstate's fee petition, the underlying factual support and the circumstances of this case, the Court imposes sanctions of $35,000 on Doherty and $4,114 on Mirarchi.

I

The Court need not repeat this case's unfortunate and protracted history. *See* (Mem. Granting Sanctions in Part 2–4, ECF No. 203); (Mem. Granting Summ. J. 2–27, ECF No. 175). Doherty filed a meritless lawsuit against Allstate. *See* (Mem. Granting § 1927 Sanctions 2–3). Acting as a litigant and an attorney, Doherty prosecuted her suit in bad faith. *See* (*id.* at 3, 8–9). Nine months into the case, she enlisted Mirarchi as her co-counsel. *See* (*id.* at 3).

1

After four years and over 200 filings, the Court partially granted Allstate's motion for sanctions. Though the Court held that the supervisory rule barred Allstate's request for sanctions under Federal Rule of Civil Procedure 11, *see* (*id.*), it found that Doherty's and Mirarchi's "serious and studied disregard for the orderly process of justice" called for sanctions under 28 U.S.C. § 1927, (*id.* at 10 (quoting *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015)). The Court identified fifty-two filings evincing Doherty's and Mirarchi's unreasonable and vexatious multiplication of the proceedings, *see* (*id.* at 6–7), and ordered Doherty and Mirarchi to pay Allstate's reasonable excess costs, expenses and attorneys' fees associated with those filings, *see* (Order ¶ 2, ECF No. 204).

The Court directed Allstate to submit a petition itemizing its excess expenditures linked to the identified filings. *See* (*id.* at ¶ 3). Allstate's petition stated that it incurred $39,618 in attorneys' fees, $6,707.30 in costs and $23,631.95 in expert fees associated with the specified docket entries. *See* (Pet. ¶¶ 5, 6, 8, ECF No. 207). As support, Allstate attached a document listing the hours worked and attorneys' fees charged for each of the fifty-two filings. *See* (*id.* Ex. C, ECF No. 207-5). It attached similar documents for the expert fees and other costs. *See* (*id.* Ex. D, ECF No. 207-6); (*id.* Ex. E, ECF No. 207-7).

Although Mirarchi declined to object to Allstate's petition,[1] Doherty asserted lengthy objections, most of which were either irrelevant or divorced from the facts or

---

[1] In a letter to the Court, Mirarchi explained that he would "not fil[e] a Response Brief of Objections to the Court's last Order" imposing § 1927 sanctions. (Mirarchi Letter, ECF No. 209.) Mirarchi did, however, purport to adopt his prior objections to Allstate's bill of costs. *See* (*id.*) To the extent that Mirarchi's prior objections are relevant, the Court addresses the substance of those objections in the discussion below.

law,[2] *see* (Objs. to Pet., ECF No. 208). But Doherty correctly objected that Allstate's petition failed to: (1) identify the name, qualifications and hourly rate for each attorney who billed Allstate; (2) specify the prevailing market rate for similar legal services; (3) list the tasks performed for the fifty-two filings; and (4) justify the requested expert fees and costs. *See* (*id.* ¶¶ 5, 6, 8). The Court ordered Allstate to address those deficiencies and allowed Doherty and Mirarchi to file supplemental objections. *See* (Order for Suppl. Docs., ECF No. 210).

Allstate recently submitted its supplemental materials. In one letter, it identified each attorney who worked on the case and listed their qualifications and hourly rate. *See* (Suppl. Letter, ECF No. 211). Allstate attached a separate letter attesting that the reasonable hourly rate for similar legal work in the community ranged from $210 to $335 per hour. *See* (*id.* Ex. B, ECF No. 211-2). In another letter, Allstate provided an affidavit and invoice sheet tracking the attorneys' fees and other costs Allstate incurred over the litigation. *See* (Second Suppl. Letter, ECF No. 215). Another document detailed the tasks performed, hours worked and attorneys' fees charged for each of the fifty-two filings. *See* (Attorneys' Fees Doc., ECF No. 212).

Once again, Doherty objected, but Mirarchi did not. Contrary to the record, Doherty claimed that Allstate had not "set forth the name, qualifications and hourly rate for each attorney." (Suppl. Objs. ¶ 1, ECF No. 213). Nor did she think Allstate had established "the prevailing market rate for similar legal services." (*Id.* at ¶ 2.) Doherty

---

[2] Of Doherty's eight objections, five are entirely meritless. For example, her first objection is to Allstate's representation that the Court granted the motion for sanctions under 28 U.S.C. § 1927. *See* (Objs. ¶ 1). This four-page, rambling objection only proves yet again why she should be sanctioned. Doherty's second, third, fourth and seventh objections contest Allstate's recitation of the overall expenses it occurred during the litigation. *See* (*id.* at ¶¶ 2–4, 7). Because Allstate is not seeking to recover its overall costs, these objections are irrelevant.

3

also criticized Allstate's submissions for neither including the specific dates that each attorney worked on each task, *see* (*id.* at ¶ 3), nor providing Third Circuit precedent to support awarding expert fees under § 1927, *see* (*id.* at ¶ 4).  Finally, Doherty argued that Allstate's documentation regarding its expert fees and costs was not specific enough to justify an award.  *See* (*id.* at ¶ 5).

II

Once a district court decides sanctions under 28 U.S.C. § 1927 are warranted, it has wide discretion in fixing the amount of sanctions to impose.  *See Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986).  In exercising that discretion, a court may award only those attorneys' fees and "costs and expenses that result from the particular misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).  Likewise, the attorneys' fees must be reasonable, and the costs and expenses limited to those "that could be taxed under 28 U.S.C. § 1920."  *Id.* Before imposing a sanction, a court must "balance the equities between the parties" and ensure that the sanction serves "the interests of justice."  *Id.*

III

A

To test whether the attorneys' fees are reasonable, courts compare the requested fees with a "lodestar"—that is, the product of the reasonable hours spent on the litigation and a reasonable hourly rate.  *See Ford*, 790 F.2d at 349 n.10.  Courts "strongly presume" that the lodestar rate results in a reasonable fee.  *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).  Even so, it is the petitioner's burden to show that its rates and hours are reasonable by submitting "evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461

4

U.S. 424, 433 (1983). Once the petitioner makes this *prima facie* showing, an objector must state any objections "with sufficient specificity." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

Two attorneys—Brian Madden and John Donnelly Jr.—worked on the fifty-two filings the Court identified; each attorney charged Allstate $180 per hour. *See* (Suppl. Letter ¶¶ 1–2). Madden is a 2007 Villanova Law School graduate and an experienced litigator who has handled various insurance disputes. *See* (*id.* at ¶ 1). Donnelly is a 1988 graduate of Temple University School of Law, the founder and managing partner of Donnelly & Associates and the author of a treatise on bad-faith insurance litigation. *See* (*id.*).[3] Richard McMonigle—an insurance litigator with thirty-nine years' experience—states on Allstate's behalf that a reasonable rate for similar legal work in the community ranged from $210 to $335 per hour. *See* (*id.* Ex. B). Doherty does not contend that the $180 hourly rate is unreasonable. *See* (Objs. ¶¶ 1–5 (raising other objections)); (Suppl. Objs. ¶¶ 1–3 (same)). Nor could she plausibly do so; she valued her own work on this case at $350 per hour. *See* (Suppl. Letter Ex. A, ECF No. 211-1). On this record, the Court finds that the $180-per-hour rate is reasonable.

Madden and Donnelly billed 220.1 hours for the fifty-two filings. *See* (Attorneys' Fees Doc.). Allstate provided a line-by-line itemization describing the tasks performed and the hours billed for each filing. *See* (*id.*) Despite Doherty's claims to the contrary, Allstate's failure to provide dates for each task performed, identify which attorney performed each task or attach contemporaneous time sheets is immaterial. *See* (Suppl.

---

[3] *See also* Brian J. Madden, Donnelly and Associates, http://donnellyandassociates.com/index.php/attorneys/brian_j._madden; John R. Donnelly Jr., Donnelly and Associates, http://donnellyandassociates.com/index.php/attorneys/john_r._donnelly_jr.

Objs. ¶¶ 1, 3). Allstate had to provide the Court with enough information to assess the reasonableness of the time charged. *See Washington*, 89 F.3d at 1035. With one exception, Allstate's detailed, line-by-line descriptions surpass that threshold. The one exception is the entry for ECF No. 162, which lacks any description of the tasks performed for the 2.8 hours billed to Allstate. *See* (Attorneys' Fees Doc. 20). But having scrutinized every other line item and excluded the entry for ECF No. 162, the Court concludes that the remaining 217.3 hours billed to Allstate are reasonable.[4] Multiplying the $180 hourly rate by the 217.3 hours expended yields a total of $39,114.

B

Section 1920 authorizes courts to tax "[f]ees and disbursements for printing and witnesses," as well as "[c]ompensation of court appointed experts." 28 U.S.C. § 1920(3), (6). This reference to "witnesses" does not authorize an award of expert witness fees. *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 164 (3d Cir. 2012) (discussing *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987)). And while § 1920 authorizes taxing compensation of court appointed experts, it does not allow parties to recover expenses for experts whom the court did not specifically appoint. *See In re Phila. Mortg. Tr.*, 930 F.2d 306, 310 (3d Cir. 1991).

Despite this precedent, Allstate seeks $23,631.95 in expert fees. *See* (Pet. ¶ 6). For support, Allstate relies on an unpublished, out-of-circuit opinion in which a district court awarded expert fees under 28 U.S.C. § 1927. *See* (Suppl. Letter ¶ 4 (citing *SunTiger Inc. v. Telebrands Advert. Corp.*, No. 9-7432-A, 2004 WL 3217731, at *8 (E.D.

---

[4] Doherty fails to specifically object to any line item as "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Va. Mar. 29, 2004) (unpublished))). Given the dubious basis for awarding expert fees under § 1927, the Court declines to do so here.

C

Allstate also seeks $6,707.30 in other costs associated with the fifty-two filings. *See* (Pet. ¶ 8). Because the Clerk of Court has yet to consider Allstate's Bill of Costs (ECF No. 199) for the entire litigation, the Court will deny without prejudice Allstate's request for costs under § 1927. After the Clerk disposes of the bill of costs, Allstate may renew its motion to have any unreimbursed costs related to the fifty-two filings added to its § 1927 award.

D

Having determined that § 1927 allows for a $39,114 sanction against Doherty and Mirarchi, the Court must now consider whether "the interests of justice" merit reducing that sanction amount. *Ford*, 790 F.2d at 347. In doing so, the Court must "balance the equities between the parties," *id.*, and remember "that the principal purpose of sanctions under § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings,'" *In re Shaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (quotation omitted).

Neither Doherty nor Mirarchi identify any circumstances that warrant a reduction in the total sanction amount. *Cf. Ford*, 790 F.2d at 347 n.6 (suggesting that a court may consider an attorney's ability to pay in crafting sanction). *But cf. Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749–50 (7th Cir. 2009) (holding district courts may not consider attorney's ability to pay and criticizing contrary authority as lumping together analyses of Rule 11 and § 1927). Read generously, Doherty's objections suggest (at most) that Allstate too acted in bad

7

faith, and the Court should reduce any sanction accordingly. *See, e.g.*, (Objs. ¶ 1(d)). The record, however, proves otherwise; Doherty and Mirarchi acted in bad faith by perpetuating a nonsensical lawsuit at every turn. *See* (Mem. Granting Sanctions in Part 6–10). Allstate, by contrast, handled itself with professionalism. Absent any mitigating circumstances, the Court declines to reduce the total award.

That said, the circumstances and balance of equities between Doherty and Mirarchi do warrant modifying the amount each should pay. Doherty was the ring master of this circus. She devised this suit "to try to con Allstate into paying for damage most likely caused by Doherty's own neglect of her properties." (*Id.* at 9). Her bad-faith conduct was borne of malice. To be sure, Mirarchi willingly enabled Doherty's worst instincts, and he is neither as naïve nor as guiltless as he pretends to be. *See, e.g.*, (Tr. of Sanctions Hr'g 64:19–22, ECF No. 206). But he lacks Doherty's malice, and his misconduct pales in comparison to Doherty's. And Mirarchi's disbarment (for unrelated conduct) blunts the deterrent effect a large sanction would have. Doherty, on the other hand, will exploit her law license and continue abusing the civil justice system unless and until she is discouraged from doing so. For these reasons, the Court orders Doherty to pay Allstate $35,000 and Mirarchi to pay the remaining $4,114.

IV

Allstate also moves to seal the filing containing the description of the legal services provided, citing ostensibly privileged attorney-client communications or mental impressions of counsel. *See* (Mot. to Seal, ECF No. 214). But Allstate neither specifies which documents (or portions of which documents) it wishes to file under seal nor carries its burden of showing good cause for sealing those documents. *See In re Avandia Mktg., Sales Practices and Products Liability Litig.*, 924 F.3d 662, 671 (3d Cir.

2019); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787–91 (3d Cir. 1994) (listing seven non-exclusive factors relevant to a good-cause determination). Until Allstate cures those defects, the Motion to Seal is denied without prejudice.[5]

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[5] If Allstate renews its motion to seal, it must explain why redacting the documents would not adequately protect its interests and address each factor listed in *Pansy*.

9